

14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

## NORTH STAR SCIENTIFIC SOLUTIONS LLC

### CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (this "Agreement") is made as of ~~June 2, 2021~~ June 8, 2021 JT, by and between NORTH STAR SCIENTIFIC SOLUTIONS LLC, a Colorado limited liability company (the "Consultant"), and Michigan Health Clinics ("Company"). Consultant and Company are hereinafter sometimes referred to individually as a "Party" and collectively as the "Parties."

RECITALS:

A.    Company is engaged in the cannabis industry, and Consultant provides certain services to companies in that industry.

B.    Company desires to contract with Consultant to provide certain services to Company, and Consultant desires to contract with Company to provide such services all upon, and subject to, the terms and conditions of this Agreement.

STATEMENT OF AGREEMENT:

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement and other good and valuable consideration in hand paid, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties do hereby agree as follows:

1.    CONSULTING SERVICES. During the term of this Agreement, Consultant will provide consulting services to Company as described on Exhibit A, attached hereto and incorporated herein by reference (the "Services"). Consultant represents that Consultant is duly licensed (as applicable) and has the qualifications, the experience and the ability to perform the Services properly. The Parties further agree as follows:

    *1.1.    Remote Work.* Unless the Parties agree in a separate agreement signed by each of the Parties, Consultant may, in its discretion, provide the Services remotely and Company shall not require Consultant to work onsite at any location. Any such separate agreement requiring Consultant to work onsite at any location shall be agreed to by each of the Parties at least two (2) weeks prior to beginning work on such site.

    *1.2.    Work Hours.* Consultant shall have unfettered discretion to determine how and when Consultant shall perform the Services, and Company shall not require Consultant to work fulltime or require Consultant to account to it for work hours in any manner.

-1-

EXHIBIT
**1**



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

1.3. *No Other Services.* Company shall not require Consultant to perform other services in addition to the Services, unless agreed to in a separate writing signed by each of the Parties.

2. **FEES.** As consideration for the Services and other obligations of Consultant, Company shall pay to Consultant the amount of money to secure the amount of hours of the Services as each are specified in Exhibit B, attached hereto and incorporated herein by reference, at the times specified therein ("Payment"). Company hereby agrees to remit such Payment within fifteen (15) days after receiving an invoice for the same. Company shall be obligated to pay a late charge on any unpaid Payment at the rate of one percent (1%) per month due each month if such late Payment remains unpaid. Consultant bills in fifteen (15) minute increments and bills for all time, lasting more than five (5) minutes, expended in performance of the Services including, without limitation, correspondence, telephone, research, drafting, testing, analyzing or otherwise related to the Services. All such billed time shall be deducted from the Payment until exhausted, at which point Company shall submit another Payment to Consultant to secure additional time for the Services.

3. **EXPENSES.** Except as expressly specified in Exhibit C, attached hereto and incorporated herein by reference, or unless subsequently agreed to by the Supervisor (defined below), which consent shall be evidenced in writing, Consultant is not authorized to incur on behalf of Company any expenses and will be responsible for all expenses incurred while performing the Services; provided, however, that Company shall pay for all of Consultant's reasonable travel expenses incurred in connection with the performance of the Services, which expenses shall be evidenced in writing

4. **CONFIDENTIALITY AGREEMENT.** As material inducement to this Agreement, the Parties shall sign, or have signed, a Confidential Agreement in the form set forth as Exhibit D, attached hereto and incorporated herein by reference (the "Confidentiality Agreement"), on or before the date Consultant begins providing the Services.

5. **TERM AND TERMINATION.** This Agreement shall commence on the date that this Agreement is executed and terminate on the earlier of (a) the date Consultant completes the provision of the Services to Company under this Agreement, or (b) either Party terminates this Agreement at any time by providing fifteen (15) days' written notice to the other Party. In the event of any such termination, Company shall pay Consultant any unpaid Payment due pursuant to Section 2. Should either Party default in the performance of this Agreement or materially breach any of its obligations under this Agreement, including but not limited to Company's obligations the Confidentiality Agreement, the non-breaching Party may terminate this Agreement immediately if the breaching Party fails to cure the breach within three (3) business days after having received written notice by the non-breaching Party of the breach or default.

6. **METHOD AND PROVISION OF SERVICES.** Consultant shall be solely responsible for determining the method, details and means of performing the Services. Consultant may, at Consultant's own expense and sole discretion, employ or engage the services of such employees,

-2-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

subcontractors, partners or agents, as Consultant deems necessary to perform the Services (collectively, the "Assistants"). The Assistants are not and shall not be employees of Company, and Consultant shall be wholly responsible for the professional performance of the Services by the Assistants such that the results are satisfactory to Company. Consultant shall expressly advise the Assistants of the terms of this Agreement, and shall require each Assistant to execute and deliver to Company the Confidentiality Agreement substantially in the form attached hereto.

7. **INDEPENDENT CONTRACTOR RELATIONSHIP.**   Consultant's relationship with Company will be that of an independent contractor and not that of an employee, and no other relationship other than an independent contractor is created hereby.  The parties further agree as follows:

**7.1.**  *No Authority to Bind Company.*  Consultant acknowledges and agrees that Consultant and the Assistants have no authority to enter into contracts that bind Company or create obligations on the part of Company, or act as an agent of Company without the prior written authorization of Company.

**7.2.**  *No Benefits.*  Consultant acknowledges and agrees that Consultant and the Assistants shall not be eligible for any Company employee benefits and, to the extent Consultant otherwise would be eligible for any Company employee benefits but for the express terms of this Agreement, Consultant (on behalf of itself and the Assistants) hereby expressly declines to participate in such Company employee benefits.

**7.3.**  *Withholding; Indemnification.*   Consultant shall have full responsibility for applicable withholding taxes for all compensation paid to Consultant or the Assistants under this Agreement, and for compliance with all applicable labor and employment requirements with respect to Consultant's self-employment, sole proprietorship or other form of business organization, and with respect to the Assistants, including state worker's compensation insurance coverage requirements and any U.S. immigration visa requirements. Consultant agrees to indemnify, defend and hold Company harmless from any liability for, or assessment of, any claims or penalties with respect to such withholding taxes, labor or employment requirements, including any liability for, or assessment of, withholding taxes imposed on Company by the relevant taxing authorities with respect to any compensation paid to Consultant or its Assistants.

**7.4.**  *Exclusive Relationship.*  In addition to the fees set forth on Exhibit B, in consideration for Company's payment of $20,000 to Consultant the Parties hereby agree that during the term of this Agreement and for two (2) years after the expiration or termination thereof, Consultant shall not provide consulting services, to any entity or individual that is: (i) engaged in the testing of cannabis and cannabis products, or any services in competition with Company's Products, and (ii) within 123

-3-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northernscientificsolutions.com
http://www.northernscientificsolutions.com

miles of Company's principal place of business. For the purposes of this Section 7.4, the term "Products" shall mean products derived from cannabis, including smokable or ingestible synthetic or natural products containing tetrahydrocannabinol, cannabidiol or any related or derivative compound thereof during the term of this Agreement. This clause does not apply to the consultant selling laboratory consumables and small equipment.

**8.   SUPERVISION OF CONSULTANT'S SERVICES.** All of the services to be performed by Consultant, including but not limited to the Services, will be specified herein or as subsequently agreed between Consultant and the individual signing on behalf of Company below, or the individual separately designated by Company in writing, if different (the "Supervisor"). Company represents and warrants that the Supervisor has full authority to bind Company. The Supervisor has no right or power to control, direct or otherwise interfere with Consultant's performance of the Services; provided, however, that the Supervisor may request reasonable notification about the status of the Services. Consultant hereby represents and warrants to perform the Services in a professional manner, in her sole discretion.

**9.   LIMITATION OF LIABILITY AND INDEMNIFICATION.**

**9.1.   *Indemnification from Third Party Claims.*** Consultant does not hereby assume any liability for the actions or omissions of the either Party, including performance of the Services, except as otherwise stated in this Agreement. Company shall indemnify Consultant from and against any third party claims, suits, actions, demands and proceedings against Consultant including, without limitation, all losses, costs and liabilities related thereto arising out of, or related to, Consultant's performance of the Services unless such claims arise from Consultant's willful misconduct in connection with the performance of the Services.

**9.2.   *Failure of Third Parties to Perform.*** Company hereby acknowledges that the ultimate outcome of the Services may be conditioned by, or contingent upon the action or inaction of, a third party, including, without limitation, various government agencies and other regulatory bodies all of which are beyond the control of Consultant. Company hereby agrees that failure of any such third party to approve the Services, or the results or outcome desired therefrom, for any reason whatsoever, does not constitute a breach of this Agreement so long as Consultant is endeavoring in good faith to perform the Services.

**10.  MISCELLANEOUS.**

**10.1.  *Entire Agreement.*** This Agreement sets forth the entire agreement and understanding of the Parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between them relating to the subject matter hereof.

-4-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

**10.2. Amendments and Waivers.** No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the Parties to this Agreement. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.

**10.3. Successors and Assigns.** Except as otherwise provided in this Agreement, this Agreement, the Parties may not assign any of the rights and obligations of the Parties hereunder unless such assignment is agreed to by each of the Parties in a separate writing signed by each of them in which case such rights and obligations will be binding upon and inure to the benefit of the Parties' respective successors, assigns, heirs, executors, administrators and legal representatives.

**10.4. Notices.** Any notice, demand or request required or permitted to be given under this Agreement shall be in writing and shall be deemed sufficient when, if sent to Consultant, sent by electronic mail transmission without receiving any notice of failure to deliver such transmission, or, if sent to Company, (i) delivered personally or by overnight courier or sent by email, (ii) forty-eight (48) hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the Party to be notified at such Party's address as set forth below, or (iii) sent by electronic mail transmission without receiving any notice of failure to deliver such transmission.

If to Consultant:     julie@northstarscientificsolutions.com

If to Company:        Michigan Health Clinics
                      4707 McLeod Drive East
                      Saginaw, Michigan 48604
                      Telephone:  989.341.5078
                      Email: jesse@mihealthclinic.com, dstockman@chs-mi.com

**10.5. Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, the Parties agree to renegotiate such provision in good faith. In the event that the Parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (i) such provision shall be excluded from this Agreement, (ii) the balance of the Agreement shall be interpreted as if such provision were so excluded and (iii) the balance of the Agreement shall be enforceable in accordance with its terms.

**10.6. Construction.** This Agreement is the result of negotiations between and has been reviewed by each of the Parties hereto and their respective counsel, if

-5-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
https://www.northstarscientificsolutions.com

any; accordingly, this Agreement shall be deemed to be the product of all of the Parties hereto, and no ambiguity shall be construed in favor of or against any one of the Parties hereto.

10.7. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement. This Agreement may be executed by means of reasonable electronic signature technology or executed on signature pages exchanged by facsimile or Portable Document Format, in which event each Party shall promptly deliver to the others such number of original executed copies as the others may reasonably request.

10.8. **Electronic Delivery.** Consultant may, in its sole discretion, request delivery of any documents related to this Agreement or any notices required by applicable law or any necessary corporate documentation by email or any other electronic means. Company hereby consents to deliver and receive such documents and notices by such electronic delivery and agrees to participate through an on-line or electronic system established and maintained by Consultant or a third party designated by Consultant.

10.9. **Governing Law; Venue.** The execution, interpretation and performance of this Agreement, and any disputes with respect to the transactions contemplated by this Agreement, including any fraud claims, shall be governed by the internal laws and judicial decisions of the State of Colorado, without regard to principles of conflicts of laws. The Parties agree that any controversy, claim or dispute between the Parties, directly or indirectly, concerning this Agreement or the breach thereof shall only be resolved in appropriate state or federal court located in Denver County, Colorado, and the Parties hereby submit to the exclusive jurisdiction of said courts.

10.10. **Attorneys' Fees for Prevailing Party.** If any litigation or other Proceeding is brought to enforce or interpret the terms of this Agreement or any other agreement delivered in connection herewith, the Prevailing Party shall be entitled to recover all fees, costs and expenses related thereto from the non-Prevailing Party or non-Prevailing Parties, including but not limited to reasonable attorneys' and accounting fees, costs and expenses. For purposes of the prior sentence, the "Prevailing Party" means the Party whose position is substantially upheld in a final judgment rendered in such litigation or other proceeding, or, if the final judgment is appealed, that Party whose position is substantially upheld by the decision of the final appellate body that considers the appeal.

*[Remainder of Page Intentionally Blank; Signature Page Follows]*



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first written above.

MICHIGAN HEALTH CLINICS

By: _____

Name: _____

Title: _____

("Company")


NORTH STAR SCIENTIFIC SOLUTIONS LLC

By: _____
Name: Julie Taylor
Title: Member

("Consultant")

-7-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

## EXHIBIT A

### DESCRIPTION OF CONSULTING SERVICES

Description of Services

1. Develop Detailed Project Plan for the set up of cannabis testing services per the Michigan Marijuana Regulatory Agency (MMRA)

    a. Provide plan to Michigan Health Clinics to review, determine responsibilities, and finalize scope of work.

2. General Consulting & Questions

3. Review Toxicology method issues to determine whether North Star Scientific Solutions can assist.

Schedule/Deadline

1. Detailed project plan to be finalized within 2 weeks of signing contract and receiving payment.

A-1



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

## EXHIBIT B

## COMPENSATION

Consultant maintains two (2) payment arrangements for Services rendered by Consultant under this Agreement. On a retainer basis, Company shall pay Consultant at the rate of $200 for 1 (one hour increments of Services, and Company agrees and acknowledges that it must exercise all of the hours secured by such retainer within three (3) months after executing this Agreement or else Consultant shall be released from providing the Services and shall retain all amounts it has received, or is entitled to, pursuant to this Agreement. On a project fee basis, Company shall pay Consultant a certain amount of money, on the terms set forth below, to complete a certain project described in Exhibit A above. The Parties agree to the following Payment:

[ X ]   **Retainer.**  Company shall pay Consultant $4,000 (the "Retainer") for 20 hours of Services. Company shall pay the entire Retainer to Consultant prior to Consultant beginning any of the Services.

[ ]   **Project Fee.** Company shall pay Consultant $_____ (the "Project Fee") to complete the project described in Exhibit A above. Select one of the following payment terms:

    [ ]   Company shall pay **fifty percent (50%)** of the Project Fee to Consultant prior to Consultant beginning any of the Services.

    [ ]   Company shall pay **one hundred percent (100%)** of the Project Fee to Consultant prior to Consultant beginning any of the Services.

[ X ]   **Exclusivity Fee.**  Company shall pay Consultant $20,000 (the "Exclusivity Fee") for an Exclusive relationship as detailed in section 7.4 of this Consulting Agreement. Company shall pay the entire Exclusivity fee to Consultant prior to Consultant beginning any of the Services.

Company shall pay the Payment to Consultant by the following method:

[ ]   **Check.**

    Payable to:   North Star Scientific Solutions LLC

    Mailed to:    North Star Scientific Solutions LLC
                    14143 Denver West Parkway Suite 100
                    Golden, CO 80401
                    Attn: Julie Taylor

[ ]   **Credit Card.** Company shall be liable for a 2.9% processing fee.

B-1



14143 Denver West Parkway Suite 100
Golden, CO 80401
(t) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

**EXHIBIT C**

**ALLOWABLE EXPENSES**

C-1



14143 Denver West Parkway Suite 100
Golden, CO 80401
(O) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

**EXHIBIT D**

**CONFIDENTIALITY AGREEMENT**

*[See Attached]*

D-1



**SCIENTIFIC SOLUTIONS**

14 43 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

## NORTH STAR SCIENTIFIC SOLUTIONS LLC

## CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

THIS CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT (this "Agreement") is entered into as of March 26, 2021, by and between NORTH STAR SCIENTIFIC SOLUTIONS LLC, a Colorado limited liability company (the "Disclosing Party") and Michigan Health Clinics (the "Receiving Party"). The Disclosing Party and the Receiving Party are hereinafter sometimes referred to individually as a "Party" and collectively as the "Parties."

RECITALS:

A.    The Parties are negotiating a certain Consulting Agreement (the "Consulting Agreement") whereby the Receiving Party will engage the Disclosing Party to provide certain services to the Receiving Party to establish a laboratory designed to test certain products for the cannabis industry (the "Purpose"). The Disclosing Party has significant know-how in such industry and desires to protect that know-how.

B.    The Parties desire to enter into this Agreement to set forth their respective obligations concerning confidentiality and non-disclosure of such information.

AGREEMENT:

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement and other good and valuable consideration in hand paid, the receipt and sufficiency of which are hereby acknowledged by the parties, the parties do hereby agree as follows:

1.    DEFINED TERMS.

Words whose initial letters are capitalized are defined terms. When used in this Agreement, such defined terms shall have the meanings set forth on Exhibit A to this Agreement or as defined in context elsewhere in this Agreement.

2.    NON-DISCLOSURE; RESTRICTION ON USE OF CONFIDENTIAL INFORMATION.

*2.1.    Non-Disclosure of Confidential Information.*

The Receiving Party shall treat as confidential and not disclose to any Person, other than as expressly permitted by this Agreement, any Confidential Information of the Disclosing Party that is disclosed to the Receiving Party in connection with any discussions related to the Purpose or in connection with the Consulting Agreement. The Receiving Party shall:

*(a)* Keep Disclosing Party's Confidential Information confidential, exercising the same degree of care and precaution with Disclosing Party's Confidential Information as

-1-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

Receiving Party exercises in protecting its own Confidential Information, but in no event shall Receiving Party use less reasonable care to safeguard from any disclosure of Disclosing Party's Confidential Information not authorized by this Agreement.

*(b)* Use the Confidential Information solely for evaluating and making business decisions related to the Purpose and not exploit any Confidential Information, directly or indirectly, in any way or manner, for its own or any other Person's use, advantage or commercial purposes, whether monetary or otherwise, except directly related to the Purpose; and

*(c)* Not disclose the Confidential Information to any Person other than to Receiving Party's Representatives who (1) need to know such information for the purpose of evaluating and making business decisions related to the Purpose, (2) are informed by Receiving Party of the confidential nature of Disclosing Party's Confidential Information and the obligations of this Agreement, and (3) agree to treat Disclosing Party's Confidential Information confidentially and to be bound by the terms of this Agreement.

### 2.2.  Notice Requirements.

Disclosing Party shall use best efforts to insure that (a) all Confidential Information disclosed in tangible form be clearly marked "Confidential" and (b) all Confidential Information disclosed visually or orally be stated as "confidential" at the time of disclosure and documented in writing by Disclosing Party and sent to the Receiving Party promptly thereafter.  Notwithstanding the foregoing obligations, if the Receiving Party receives any information that it can reasonably determine is the Disclosing Party's Confidential Information, then Receiving Party shall treat such information as Disclosing Party's Confidential Information and be bound by all of the obligations herein.

### 2.3.  No Disclosure of Discussions.

Without first obtaining the consent of the other Party, a Party shall not, and shall cause its Representatives not to, disclose to any other Person (a) that the Party or its Representatives have received Confidential Information, (b) that investigations, discussions or negotiations are taking place or have taken place concerning the Purpose, or (c) any of the terms, conditions or other facts related to the Purpose, including the status thereof and the identity of the Parties.

### 2.4.  Legally Required Disclosures.

If Receiving Party or any of its representatives becomes legally compelled in any Proceeding or is otherwise required by Legal Requirements to make any disclosure of Disclosing Party's Confidential Information that is otherwise prohibited by this Agreement, Receiving Party shall notify Disclosing Party promptly about such Proceedings so that Disclosing Party may seek an appropriate protective Order or other appropriate relief.  In the absence of a protective Order, Receiving Party or its Representative may disclose that portion (and only that portion) of the

-2-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

Confidential Information that Receiving Party or its Representative is legally compelled to disclose, <u>provided</u>, <u>however</u>, that Receiving Party must use reasonable efforts to obtain reliable assurance that confidential treatment will be accorded by any Person to whom any Confidential is so disclosed.

### 2.5.  *Compliance by Representatives.*

Receiving Party shall be responsible for enforcing this Agreement as to its Representatives and shall take such action to the extent necessary to cause them to comply with all of the terms of this Agreement.

### 2.6.  *No Required Disclosure.*

This Agreement shall not require either Party to disclose any information to the other Party or require the consummation of any transaction in connection with which the Confidential Information is disclosed.  In addition, Receiving Party understands and acknowledges that neither Disclosing Party, its Affiliates, nor any of their respective Representatives are making any express or implied representation or warranty as to the accuracy or completeness of Disclosing Party's Confidential Information.  Only those representations or warranties, if any, that may be made in any definitive agreement related to the Purpose, if executed, shall be binding upon the Parties, or any of their respective Affiliates, if applicable.

### 2.7.  *No Obligation to Negotiate or Enter a Transaction.*

Each of the Parties reserves the right to reject any and all proposals made by any other Party or its Representatives regarding the Purpose and to terminate discussions and negotiations with the other Party and their respective Representatives at any time.  No Party shall have rights or obligations of any kind whatsoever with respect to the Purpose by virtue of this Agreement other than for the matters specifically agreed herein.

### 2.8.  *Ownership of Confidential Information.*

Receiving Party acknowledges and agrees that this Agreement does not constitute any license or other conveyance of any rights (including any intellectual property rights) with respect to the Disclosing Party's Confidential Information and that, as between the Parties, such Confidential Information is and shall remain the sole and exclusive property of Disclosing Party.  Receiving Party shall not, and shall cause its Representatives not to, remove any copyright, confidentiality or proprietary rights notice attached to or including in any of Disclosing Party's Confidential Information and shall reproduce all such notices on any copies thereof.  Receiving Party shall not, nor shall it allow its Representatives to, take any act or omit to take any act inconsistent with Disclosing Party's ownership in and to its Confidential Information.

### 2.9.  *No Impairment of Each Party's Ongoing Business.*

-3-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

Each Party understands and agrees that the other Party may be in a business similar to or the same and may already have developed, in the process of developing, or plan to develop, products, services or information similar to those owned or developed by the other Party. Nothing herein shall be construed (a) to affect or limit either Party's present and future business activities of any nature, including business activities that could be competitive with the other Party, or (b) as a representation that Receiving Party does not or will not have independently developed or legally received information that may be the same or similar to Disclosing Party's Confidential Information; provided, however, that Receiving Party does not violate any of its obligations under this Agreement in connection with any such development or acquisition. Notwithstanding anything in the foregoing to the contrary, nothing in this Agreement shall prevent the Receiving Party from independently developing any products or services that may directly or indirectly compete with the Disclosing Party's products or services; provided, however, that Receiving Party does not use any Confidential Information of the Disclosing Party to develop such products or services.

**2.10. *Early Termination of Agreement; Disposition of Confidential Information.***

(a) This Agreement shall continue in force until terminated as provided in the Consulting Agreement. The obligations of Receiving Party with respect to the use and secrecy of the Confidential Information, however, shall remain in full force and effect for as long as such information remains Confidential Information.

(b) At any time following the request of Disclosing Party, or upon termination of this Agreement, Receiving Party shall promptly (1) deliver to Disclosing Party all documents or other materials in Receiving Party's or its Representatives' possession or control constituting Confidential Information of Disclosing Party, together with all copies, and (2) destroy materials generated by Receiving Party or its Representatives that include or refer to any part of the Confidential Information of Disclosing Party, without retaining a copy of any such material. Upon request of Disclosing Party, Receiving Party shall certify that it has complied with this Section 2.10. Despite any such return of any Confidential Information by Receiving Party, it and its Representatives shall thereafter continue to be bound by Receiving Party's obligations of confidentiality imposed by this Agreement.

(c) Notwithstanding any in this Section 2.10 to the contrary, Receiving Party may retain Confidential Information (1) for the purposes of defending or maintaining any litigation (including any administrative proceeding) relating to this Agreement or the Purpose, (2) that may be found in analyses, compilations, models, studies or other documents produced by Receiving Party or its Representatives, (3) pursuant to Receiving Party's or its Representatives' automatic back-up and archiving systems or the ordinary operation of electronic devices, (4) to comply with any Legal Requirements, and (5) to operate the laboratory established in connection with the Purpose; provided, however, that in each such case Receiving Party continues to keep such Confidential Information confidential pursuant to the terms of this Agreement.

-4-



**SCIENTIFIC SOLUTIONS**

14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

#### *2.11. Royalty Fee.*

Notwithstanding anything to the contrary, the Parties may agree in a separate agreement, containing all definitive terms, signed by each of them that Receiving Party may use Disclosing Party's Confidential Information and pay Disclosing Party a certain fee for such usage; provided, however, that any such separate agreement shall contain adequate protections, in Disclosing Party's sole discretion, to prevent disclosure of Disclosing Party's Confidential Information to any third party.

### 3.   ENFORCEMENT AND REMEDIES.

#### *3.1.   Remedies.*

Receiving Party acknowledges and agrees that any disclosure or any use of Disclosing Party's Confidential Information in violation of the terms of this Agreement will irreparably harm Disclosing Party and may enable other Persons to compete unfairly with Disclosing Party or its Affiliates.   Accordingly, if Receiving Party or any of its Representatives violates any of the provisions of this Agreement, Disclosing Party may take any one or more of the following actions for any breach of this Agreement, all of which remedies shall be deemed cumulative and in additional to all other remedies available at law or equity to Disclosing Party, and none of which shall be deemed to be exclusive:

*(a)* Seek a temporary restraining Order, a temporary and permanent injunction and other equitable or injunctive relief, without the requirement of posting a bond or other security, enjoining Receiving Party or any of its Representatives from continued violation of those provisions in addition to any other remedies that may be available to Disclosing Party; and

*(b)* Seek damages for the violation of the provisions of this Agreement or pursue any and all other rights and remedies that may be available at law, in equity or otherwise.

#### *3.2.   Waiver of Jury Trial.*

The Parties hereby waive trial by jury in any Proceeding brought by any Party against another Party on any matter arising out of or in any way connected with this Agreement.

#### *3.3.   Attorney's Fees.*

If any Proceeding is necessary to enforce the terms of this Agreement, the prevailing Party shall be entitled to reasonable attorney's fees, costs and expenses in addition to any other relief to which such prevailing Party may be entitled.

#### *3.4.   Survival.*

-5-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
https://www.northstarscientificsolutions.com

The rights and obligations of the Parties under this Section 3 shall survive any termination of this Agreement.

4. MISCELLANEOUS PROVISIONS.

4.1. *Relationship of the Parties.*

Nothing contained in this Agreement shall place the Parties in the relationship of partners, joint venturers or principal and agent as it is not the purpose of this Agreement to define or alter a relationship. Neither Party is authorized to assume or undertake any obligation of any kind on behalf of the other Party by virtue of this Agreement.

4.2. *Amendments; Waiver.*

This Agreement may be amended, modified or superseded only by a written instrument signed by all of the Parties. No Party shall be deemed to have waived compliance by another Party of any provision of this Agreement unless such waiver is contained in a written instrument signed by the waiving Party and no waiver that may be given by a Party will be applicable except in the specific instance for which it is given. The failure of any Party to enforce at any time any of the provisions of this Agreement, to exercise any right or option contained in this Agreement or to require at any time performance of any of the provisions of this Agreement by the other Party, shall not be construed to be a waiver of such provisions and shall not affect the validity of this Agreement or any of its provisions or the right of such Party thereafter to enforce each provision of this Agreement. No course of dealing shall operate as a waiver or modification of any provision of this Agreement or otherwise prejudice a Party's rights, powers and remedies.

4.3. *Notices.*

To be effective, all notices, requests, consents, approvals, waivers, demands and other communications required or permitted to be given or made under this Agreement shall be in writing and shall be deemed delivered when, if sent to Disclosing Party, sent only by electronic mail transmission without receiving any notice of failure to deliver such transmission, or, if sent to Receiving Party, (a) on the date of personal delivery, transmission by facsimile with confirmation of completed transmission, or transmission by electronic mail without receiving any notice of failure to deliver such transmission, (b) on the first business day following the date of delivery to a nationally recognized overnight courier service, or (c) the third business day following the date of deposit in the United States Mail, postage prepaid, or by certified mail, in each case, addresses as follows, or to such other address or Person as any Party may designate by notice to the others in accordance herewith:

> If to Disclosing Party:    julie@northstarscientificsolutions.com
>
> If to Receiving Party:    Michigan Health Clinics

-6-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(O) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

4707 McLeod Drive East
Saginaw, Michigan 48604
Telephone: 989.341.5078
Email: jesse@mihealthclinic.com, dstockman@chs-mi.com

### 4.4.   Construction and Interpretation of Agreement.

*(a)* This Agreement shall be governed by, and shall be construed and enforced in accordance with, the Legal Requirements of the State of Colorado, without giving effect to any conflict of law rule or principle of such state.  This Agreement shall supplement, but not displace, the rights and responsibilities set forth in the Colorado Uniform Trade Secrets Acts, as amended, set forth in Colorado Revised Statutes §§ 7-74-101 through 7-74-110.

*(b)* The Parties hereby (a) agree that any Proceeding arising out of, or related to, this Agreement shall be brought in the state courts of the County of Denver, Colorado or in the U.S. District Court for the District of Colorado, and (b) irrevocably accept the exclusive personal jurisdiction of those courts for the purposes of any suit, action or Proceeding.  In addition, each Party hereby irrevocably waives, to the fullest extent permitted by Legal Requirements, any objection which such Party may now or hereafter have to the laying of venue of any suit, action or Proceeding arising out of or relating to this Agreement or any judgment entered by any court in respect thereof in the County of Denver, Colorado or the U.S. District Court for the District of Colorado, and hereby further irrevocably waives any claim that any Proceeding brought in any such court has been brought in an inconvenient forum

*(c)* This Agreement is being made and entered into solely for the benefit of the Parties, and no Party intends hereby to create any rights in favor of any other Person as a third party beneficiary of this Agreement or otherwise.  All the provisions of this Agreement shall be binding upon and shall inure to the benefit of, and by enforceable by, the Parties and their respective heirs, Representatives, successors and assigns.

*(d)* Both Parties acknowledge and agree that each Party has had the benefit of competent, independent legal counsel and other advisors, and an equal right to negotiate the terms and participate in the drafting of this Agreement.  If any ambiguity or question of intent or interpretation arises, no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

*(e)* Section titles or captions in this Agreement are included for purposes of convenience only and shall not be considered a part of this Agreement in construing or interpreting any of tis provision.  All references in this Agreement to Sections shall refer to Sections of this Agreement unless the context clearly otherwise requires.

*(f)* When used in this Agreement, the words "include," "including," or other variants thereof shall have the commonly accepted meaning associated with such words and any

-7-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northernscientificsolutions.com
http://www.northernscientificsolutions.com

list of items may follow such words shall not be deemed to represent a complete list of the contents of the referent of the subject.

(g) Unless the context otherwise requires, when used in this Agreement, the singular shall include the plural, the plural shall include the singular, and all pronouns shall be deemed to refer to the masculine, feminine or neuter, as the identity of the Person or Persons may require.

(h) If a court in any Proceeding holds any provision of this Agreement or its application to any Person or circumstance invalid, illegal or unenforceable, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those to which it was held to be invalid, illegal or unenforceable, shall not be affected and shall be valid, legal and enforceable to the fullest extent permitted by Legal Requirements, but only if and to the extent such enforcement would not materially and adversely frustrate the Parties' essential objectives as expressed in this Agreement. Furthermore, in lieu of any such invalid or unenforceable term or provision, the Parties intend that the court reform this Agreement to add a provision as similar in terms to such invalid, illegal or unenforceable provision as may be valid and enforceable, so as to effect the original intent of the Parties to the greatest extent possible.

### 4.5. Counterparts.

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement. This Agreement may be executed by means of reasonable electronic signature technology or executed on signature pages exchanged by facsimile or Portable Document Format, in which event each party shall promptly deliver to the others such number of original executed copies as the others may reasonably request.

### 4.6. Exhibits; Entire Agreement.

All Exhibits to this Agreement shall constitute part of this Agreement and shall be deemed to be incorporated in this Agreement by reference and made a part of this Agreement as if set out in full at the point where first mentioned. This Agreement embodies the entire agreement and understanding of the Parties related to its subject matter and supersedes all prior proposals, understandings, agreements, correspondence, arrangements and contemporaneous oral agreements related to the subject matter of this Agreement. No representation, promise, inducement or statement of intention has been made by any Party that has not been embodied in this Agreement.



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

*[Remainder of Page Intentionally Blank; Signature Page Follows]*

-9-



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

IN WITNESS WHEREOF, the undersigned have executed this Agreement on the day and year first above written.

MICHIGAN HEALTH CLINICS

By: _____

Name: Jesse McLeod

Title: Lab Director

("Receiving Party")

NORTH STAR SCIENTIFIC SOLUTIONS LLC

By: _____
Name: Julie Taylor
Title: Member

("Disclosing Party")



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

**EXHIBIT A**
**DEFINED TERMS**

*"Affiliate"* shall mean, with respect to any Party, any Person that directly or indirectly controls, is controlled by or is under common control with, such Party.

*"Confidential Information"* shall mean and include all of (a) Disclosing Party's proprietary information that it may disclose to Receiving Party, whether orally, in writing, electronically or through a demonstration or presentation in any tangible form, including financial information, technical data, business plans, customer information, pricing information, sales and marketing information, information relating to Disclosing Party's operating systems, software, systems interfaces, operating processes, algorithms, analytical instrument methods, copyright, trademarks, patents, formulas, recipes, designs, standard operating procedures, trade secrets and other information and documents, analyses, compilations or business or technical information and (b) other material prepared by the Receiving Party (or any of its Representatives) that contains or is based on any proprietary or confidential information of Disclosing Party that was disclosed to Receiving Party; *but shall not mean and shall exclude* any information that (1) at the time of disclosure to Receiving Party is generally available to the public or subsequent to the disclosure becomes generally available to the public through no act or omission of Receiving Party in violation of this Agreement; (2) Receiving Party can demonstrate that it was in its possession at the time of, or prior to, disclosure and such information was not otherwise acquired, directly or indirectly, from Disclosing Party and otherwise not in violation of this Agreement; (3) becomes available to Receiving Party on a non-confidential basis from a Person not known by the Receiving Party to be under any obligations of confidence to Disclosing Party; (4) independently developed by Receiving Party or another Person by individuals who did not have access to any of Disclosing Party's Confidential Information; or (5) social media accounts and contacts, including, without limitation, "followers" or "friends," (as such terms are used on respective social media platforms) that are acquired through such accounts including, but not limited to, email addresses, blogs, Twitter, Facebook, YouTube, or other social media networks ("Social Media Accounts") owned by, used by or created on behalf of the Receiving Party on the date hereof; provided, however, that this subsection shall apply only to new Social Media Accounts or new content created thereon during the term of this Agreement. For purposes of clarity, Confidential Information shall not include any Social Media Account owned or controlled by Disclosing Party or personally owned by Julie Taylor and such Persons shall maintain all rights and interest in, and to, their respective Social Medial Accounts.

*"Governmental Body"* shall mean any (a) nation, state, country, city, town, village, district, or other jurisdiction of any nature; (b) federal, state, local, municipal, foreign, or any other government; (c) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court of other tribunal); or (d) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

A-11



14143 Denver West Parkway Suite 100
Golden, CO 80401
(C) 720.295.7571
julie@northstarscientificsolutions.com
http://www.northstarscientificsolutions.com

*"Legal Requirement"* shall mean any federal, state, local, municipal, foreign, international, multinational, or other Order, constitution, law, ordinance, principle of common law, regulation, statute, or treaty.

*"Order"* shall mean any award, decision, injunction, judgment, writ, decree, order, ruling, subpoena, or verdict entered, issued, made, or rendered by any Governmental Body or by any arbitrator.

*"Person"* shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association or any other type of business organization, organization, labor union, or Governmental Body.

*"Proceeding"* shall mean any action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative, investigative, or informal) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Body or arbitrator.

*"Representative"* shall mean, regarding a particular Person, any officer, employee, agent, consultant, advisor, or other representative of such Person, including legal counsel, accountants, and financial advisors.